In re Henry Sherman FINGADO, a/k/a H.S. Fingado, SS # 524–40–1028, Debtor.

Harley H. SWINK, trustee, Plaintiff,

v.

SUNWEST BANK as trustee for the Estate of Gillespie, Dale B. Gerdman, MPK Corporation, Euclid Alcon and Jacob Alcon, Valley National Bank, James M. Durett, Adm., CTA for the Estate of Stella Dysart, Francis E. Doughty, Daniel H. Doughty and Michael F. Doughty, DuBois, Caffrey & Cooksey, P.A., Loren E. Smith, Fairfield, Farrow, Hunt, Reecer & Strotz, P.C., Western Bank of Albuquerque, Jeffrey Neill Brown, Robert E. Brown, Stephen L. Rohde, Dan L. Nelson, H.E. Toles, Bill Jones and Valetta Ruth Fingado, Defendants.

Bankruptcy No. 7–87–00316 MA.
Adv. No. 89–0320 M.

United States Bankruptcy Court,
D. New Mexico.

April 17, 1990.

Leslie C. King, III, Santa Fe, N.M., trustee.

Kathryn Lucero, Albuquerque, N.M., for D. Gerdeman.

Graham Browne, Albuquerque, N.M., for United Management.

Geraldine E. Rivera, Albuquerque, N.M., for Valley Nat.

William E. Snead, Albuquerque, N.M., for J. Durrett.

Robert E. Poulson, Albuquerque, N.M., for Doughty.

John F. Caffrey, Albuquerque, N.M., for Dubois, et al.

David G. Reynolds, Albuquerque, N.M., for L. Smith.

John E. Farrow, Albuquerque, N.M., for Fairfield, et al.

Richard C. Civerolo, Albuquerque, N.M., for Western Bank.

Scott N. Oliver, Albuquerque, N.M., for Brown, Rohde & Nelson.

Robert I. Waldman, Albuquerque, N.M., for V. Fingado.

Douglas R. Vadnais, Albuquerque, N.M., for Sunwest Bank as Trustee.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court for trial on the merits on the trustee's complaint to sell property free and clear of liens and interests and to determine validity, priority and extent of liens and interests, and Valetta Ruth Fingado's motion to accept purchase offer and motion by joint tenant Ruth Fingado for payment from sale of Vermont Street house. Having considered the arguments of counsel, testimony, and exhibits submitted by the parties, and being otherwise fully informed and advised the Court issues this memorandum opinion granting judgment in favor of the trustee and denying Valetta Ruth Fingado's motions.

## FACTS

An involuntary petition was filed against the debtor H.S. Fingado and Valetta Ruth Fingado on February 17, 1987. An order for relief was entered on December 9, 1987. Valetta Ruth Fingado was dismissed from the bankruptcy on December 13, 1988. The Fingados are married and were married prior to purchasing the properties at issue here. The Fingados purchased a house on Vermont Street in 1964 and used it as a rental house. The Fingados purchased a house at 6840 Rio Grande N.W. in 1969 for use as a residence. Both conveyances were to "H.S. Fingado and Ruth Fingado, his wife, as joint tenants."

## DISCUSSION

I. Classification of Property

██ The applicable law is set forth in 11 U.S.C. § 541(a)(2)(A) & (B) which provides:

(a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor, and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

Thus, a petition by one spouse passes all community property into property of the estate. *See also, In re Merlino*, 62 B.R. 836, 839 (Bankr.W.D.Wash.1986); *In re Hendrick*, 45 B.R. 976, 983 (Bankr.M.D.La. 1985). Valetta Ruth Fingado disputes the classification of these properties as community property. She claims co-owner status as a joint tenant who is entitled to the privileges afforded co-owners under 11 U.S.C. § 363(h) and (j).[1] Under 11 U.S.C.

---

1. (h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light or power.

(j) After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

11 U.S.C. § 363(h) and (j).

§ 363(h), Valetta Ruth Fingado claims that partition of the land is practical and requests the Court to order the trustee to partition the properties, leaving her the portion of the Rio Grande property with the house. Under 11 U.S.C. § 363(j), the trustee distributes to the co-owners their share of the proceeds of the property after administrative expenses have been paid. Valetta Ruth Fingado claims one-half of the proceeds of both the Vermont Street house and the Rio Grande property. The trustee and the creditors allege that the property is not held in joint tenancy and the only right Valetta Ruth Fingado is entitled to as a spouse is the right to purchase the property at the price at which the sale is to be consummated under 11 U.S.C. § 363(i).[2] Thus, the first question to be determined is whether the property of the Fingados is community or separate under New Mexico law.

■ In New Mexico, there is a clearly stated presumption of community property. N.M.S.A. § 40–3–12(A) (Repl.Pamp.1989) provides that "property acquired during marriage by either husband or wife, or both, is presumed to be community property." In *White v. White* the court stated that the party "asserting the separate character of property has not only the burden of going forward with the evidence, but of establishing separate ownership by a preponderance of the evidence." 105 N.M. 600, 605, 734 P.2d 1283, 1288 (Ct.App.1987). *See also, Nichols v. Nichols*, 98 N.M. 322, 327, 648 P.2d 780, 785 (1982). The Fingados presented deeds which convey property to "H.S. Fingado and Valetta Ruth Fingado, his wife, as joint tenants" as the sole evidence by which to overcome the community property presumption. Debtor's exhibits 3 & 5. New Mexico law provides however, that property conveyed to a husband and wife as joint tenants can be considered community property. N.M.S.A. § 40–3–8(A) & (B) (Repl.Pamp.1989) states:

A. 'Separate property' means:
(5) property designated as separate property by a written agreement between the spouses *including a deed or other written agreement concerning property held by the spouses as joint tenants ... in which the property is designated as separate property.* (emphasis added).

B. 'Community property' means property acquired by either or both spouses during marriage which is not separate property. *Property acquired by a husband and wife by an instrument in writing whether as tenants in common or as joint tenants or otherwise will be presumed to be held as community property unless such property is separate property within the meaning of Subsection A of this section.* (emphasis added).

Additionally, under the New Mexico Probate Code, the treatment of property in probate proceedings shows the legislature intended that property held as joint tenants may be treated as community property. N.M.S.A. § 45–2–804(A) (Repl.Pamp.1989) provides that *"community property that is joint tenancy property* under Subsection B of Section 40–3–8 NMSA 1978 shall not be subject to the testamentary disposition of the decedent." (emphasis added). Therefore, it is not a question whether the property is held as community *or* joint tenancy. Clearly, property held in joint tenancy can be community property.

■ The New Mexico statutory scheme makes it clear that if a party alleges that property held in joint tenancy was meant to be separate, to prevail there must be either a clear designation of that intent, or enough evidence to overcome the presumption of community property. *Nichols v. Nichols*, 98 N.M. 322, 648 P.2d 780 (1982). No showing sufficient to overcome the presumption has been made in this case. Therefore, the properties here are

**2.** (i) Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.

11 U.S.C. § 363(i).

community property. As such, the properties become part of the debtor's estate pursuant to 11 U.S.C. § 541(a)(2).

As a spouse, Valetta Ruth Fingado does have a right to purchase the community property at the price at which the sale is to be consummated. 11 U.S.C. § 363(i). Valetta Ruth Fingado does not have any co-owner rights, however, under 11 U.S.C. § 363(h) or (j), because the property is community property and Valetta Ruth Fingado is not a co-owner under the Bankruptcy Code. 4 Collier on Bankruptcy ¶ 541.15[6] at 541–91 to 92 (15th ed. 1989); *In re Hendrick*, 45 B.R. 976, 987 (Bankr.M.D.La. 1985). Therefore, the Court grants judgment in favor of the trustee on the complaint and authorizes the trustee to sell the property free and clear of liens and interests. Valetta Ruth Fingado has fifteen days after notification by the trustee to match the price at which the sale will be consummated.

II. Distribution of Community Property

■■■■ Even though the community property is included within the debtor's estate, Valetta Ruth Fingado's share of the community property may not be available to satisfy the creditors in H.S. Fingado's bankruptcy if the debts listed in the petition are classified as separate debts. 11 U.S.C. § 726(c)(2)(A)–(D) governs the distribution of community property.

(c) Notwithstanding subsections (a) and (b) of this section, if there is property of the kind specified in section 541(a)(2) of this title, or proceeds of such property, in the estate, such property or proceeds shall be segregated from other property of the estate, and such property or proceeds and other property of the estate shall be distributed as follows:

(2) Allowed claims, other than claims allowed under section 503 of this title, shall be paid in the order specified in subsection (a) of this section, and with respect to claims of a kind specified in a particular paragraph of section 507 of this title or subsection (a) of this section, in the following order and manner:

(A) First, community claims against the debtor or the debtor's spouse shall be paid from property of the kind specified in section 541(a)(2) of this title, except to the extent that such property is solely liable for debts of the debtor.

(B) Second, to the extent that community claims against the debtor are not paid under subparagraph (A) of this paragraph, such community claims shall be paid from property of the kind specified in section 541(a)(2) of this title that is solely liable for debts of the debtor.

(C) Third, to the extent that all claims against the debtor including community claims against the debtor are not paid under subparagraph (A) or (B) of this paragraph such claims shall be paid from property of the estate other than property of the kind specified in section 541(a)(2) of this title.

(D) Fourth, to the extent that community claims against the debtor or the debtor's spouse are not paid under subparagraph (A), (B), or (C) of this paragraph, such claims shall be paid from all remaining property of the estate.

Thus, the section requires the segregation of community property and directs that debts are to be paid in the following manner. Under subsection (A) community property is available for payment of community claims. Under subsection (B) community property is available for payment of claims for which the debtor is solely liable. Under subsection (B), if State law allows for community property to be liable for separate debts, then community property would be available in bankruptcy for those same debts. *In re Merlino*, 62 B.R. 836, 840 (Bankr.W.D.Wash.1986). New Mexico law allows a separate debt to be collected first from the debtor spouse's separate property, then from the debtor spouse's share of community property. New Mexico law does not allow a separate debt to be satisfied by the non-debtor spouse's share of community property. N.M.S.A.

§ 40–3–10(A) (Repl.Pamp.1989).[3] Thus, whether Valetta Ruth Fingado's share of the community property can be used to satisfy the debts depends on whether the debts are community or separate.

In New Mexico, there is a presumption that debt incurred by a married person is community debt. N.M.S.A. § 40–3–9(A) & (B) (Repl.Pamp.1989) defines separate and community debt and provides in subsection (B) that community debt means "a debt contracted or incurred by *either* or both spouses during marriage which is not a separate debt." (emphasis added). Subsection (B) makes clear that one spouse can incur a community debt. A limitation on one spouse's power to encumber the community is found in N.M.S.A. § 40–3–13(A) (Repl.Pamp.1989), which states that both spouses must join in all transfers, conveyances, mortgages or contracts to transfer, convey or mortgage any interest in community real property.[4] Thus, if both spouses do not join, the attempt by one spouse to transfer, convey or mortgage community real property is void. In *First State Bank v. Muzio*, the court held that a transcript of judgment in a foreclosure action naming the husband would not affect the community interest of the wife where the husband had signed a guaranty attempting to encumber the community real property without the wife's joinder. 100 N.M. 98, 666 P.2d 777 (1983).

Absent the attempt to transfer, convey or mortgage community real property, courts will allow the community to be subject to certain debts without the concurrence of one spouse. In *Lubbock Steel & Supply, Inc. v. Gomez*, the court allowed two husbands to encumber community property without their wives' signature on a promissory note. 105 N.M. 516, 734 P.2d 756 (1987). And in *Execu–Systems, Inc. v. Corlis*, the court held that a listing agreement could bind both spouses even when signed by one. "The fact that upon breach by the defendant the plaintiff can bring suit, obtain a judgment and levy on the property without the wife's signature is not violative of New Mexico community property laws. A husband can subject the community to certain debts without the concurrence of his wife." 95 N.M. 145, 147, 619 P.2d 821, 823 (1980). Therefore, the underlying facts of each transcript of judgment and each debt scheduled by the debtor must be examined to determine whether the community property will be liable for payment.

N.M.S.A. § 40–3–9(A) (Repl.Pamp. 1989) defines separate debt and provides in relevant part:

A. 'Separate debt' means:

(3) a debt designated as a separate debt of a spouse by a judgment or decree of any court having jurisdiction;

(4) a debt contracted by a spouse during marriage which is identified by a spouse to the creditor in writing at the time of

---

**3.** A. The separate debt of a spouse shall be satisfied first from the debtor spouse's separate property, excluding that spouse's interest in property in which each of the spouses owns an undivided equal interest as a joint tenant or tenant in common. Should such property be insufficient, then the debt shall be satisfied from the debtor spouse's one-half interest in the community property or in property in which each spouse owns an undivided equal interest as a joint tenant or tenant in common, excluding the residence of the spouses. Should such property be insufficient, then the debt shall be satisfied from the debtor spouse's interest in the residence of the spouses, except as provided in section 42–10–9 N.M. S.A.1978. Neither spouse's interest in community or separate property shall be liable for the separate debt of the other spouse.
N.M.S.A. § 40–3–10(A) (Repl.Pamp.1989).

**4.** A. Except for purchase-money mortgages and except as otherwise provided in this subsection, the spouses must join in all transfers, conveyances or mortgages or contracts to transfer, convey or mortgage any interest in community real property and separate real property owned by the spouses as co-tenants in joint tenancy or tenancy in common....
Any transfer, conveyance, mortgage or lease or contract to transfer, convey, mortgage or lease any interest in the community real property or in separate real property owned by the spouses as co-tenants in joint tenancy or tenancy in common, attempted to be made by either spouse alone in violation of the provisions of this section shall be void and of no effect, except that either spouse may transfer, convey, mortgage or lease directly to the other without the other joining therein.
N.M.S.A. § 40–3–13(A) (Repl.Pamp.1989).

its creation as the separate debt of the contracting spouse;

(5) a debt which arises from a ... separate tort committed during marriage;

Valetta Ruth Fingado alleges that the fraud committed by her husband is clearly a separate tort and that the judgments arising therefrom are not collectible from her share of the community property. As to the judgment creditor Loren E. Smith, the state court judgment entered in cause CV 86–07906, Second Judicial District Court, is res judicata as to the fraud issue. As to the other tort creditors, the test for determining whether a tort is separate is enunciated in *Dell v. Heard*, 532 F.2d 1330, 1334 n. 2 (10th Cir.1976) (citing Bingaman, *The Community Property Act of 1973: A Commentary and Quasi–Legislative History*, 5 N.M.L.Rev. 1 (1974)).

> [T]he test to be applied in such cases is an after-the-fact determination of whether the act in which the spouse was engaged at the time of the tort was one which was of actual or potential benefit to the community.

Valetta Ruth Fingado did not present any evidence to rebut the presumption of community debt other than the fact that the judgments against the property seem in most instances to name only H.S. Fingado. Therefore, the Court finds that the debts are community debts.

## III. Exemptions

An additional question before the Court concerns the homestead exemption allowed to both H.S. and Valetta Ruth Fingado. At issue is what amount H.S. and Valetta Ruth Fingado can claim for their homestead exemptions. The involuntary petition against the Fingados was filed on February 17, 1987. Initially, the Fingados were both in bankruptcy and claimed the state exemptions. A change in New Mexico law which clearly enunciated that *each spouse* was allowed an exemption went into effect on June 19, 1987. The order for relief was entered on December 9, 1987. Valetta Ruth Fingado was dismissed from the bankruptcy on December 13, 1988.

In determining the applicable law concerning exemptions, the language of 11 U.S.C. § 522(b)(2)(A) is clear; the date for determining the law applicable to exemptions is the date of the filing of the petition.[5] In *In re Butcher*, the court held that the date of filing the original involuntary petition rather than the date of the order for relief determined the applicable law fixing the debtor's exemption rights. 75 B.R. 441, 442–43 (E.D.Tenn.1987), *aff'd.*, 848 F.2d 189 (6th Cir.1988). Therefore, the law as applied to H.S. Fingado fixes his homestead exemption at $10,000. Because Valetta Ruth Fingado was dismissed from the bankruptcy, she is not subject to the exemption law that was in effect prior to June 19, 1987.

An additional matter on the question of exemptions is the claim by the creditor Loren Smith alleging that Valetta Ruth Fingado is foreclosed from claiming any exemption against Smith because of a prior default judgment in which Valetta Ruth Fingado did not claim her homestead exemption. N.M.S.A. § 39–4–15 (1978) provides that an exemption to a foreclosure suit if not claimed in the answer is waived.[6] "To be entitled to a homestead exemption, a party had to claim the exemption in his answer to a foreclosure action; otherwise he could not claim it." *US Life Title Ins. Co. of Dallas v. Romero*, 98 N.M. 699, 704, 652 P.2d 249, 254 (Ct.App.1982). The judgment in CV 86–07906, Second Judicial District Court entered on October 27, 1987, is likewise res judicata as to this issue. It holds that Valetta Ruth Fingado has no interest in the property superior to that of Loren Smith.

---

5. [A]ny property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition.

11 U.S.C. § 522(b)(2)(A).

6. The defendant, if he desires to claim such real estate or any part thereof as an exemption allowed by law, shall set up his claim of exemption by answer in such foreclosure suit. N.M.S.A. § 39–4–15 (1978).

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052. An appropriate order shall enter.

ORDER

This matter came before the Court for trial on the merits on the trustee's complaint to sell property free and clear of liens and interests and to determine validity, priority and extent of liens and interests, and Valetta Ruth Fingado's motion to accept purchase offer and motion by joint tenant Ruth Fingado for payment from sale of Vermont Street house. For the reasons set forth in the memorandum opinion entered in connection herewith

IT IS ORDERED that

1) The trustee is authorized to sell the property free and clear of liens and interests with liens attaching to the proceeds. Counsel for the trustee is directed to prepare a judgment in conformity with this memorandum opinion, approved as to form by defendant, and submit it to the Court for entry within 10 days.

2) Counsel for the trustee is directed to make a determination within 10 days as to whether he can present a judgment with regard to the determination of validity, priority and extent of liens and interests. If a judgment cannot be presented, the trustee is directed to request a hearing.

3) Valetta Ruth Fingado has 15 days after notification by the trustee to match the purchase price at which the sale of the Rio Grande property is to be consummated.

4) Valetta Ruth Fingado's motion to accept purchase offer and motion by joint tenant Ruth Fingado for payment from the sale of Vermont Street house are denied.

5) H.S. Fingado is entitled to a $10,000 homestead exemption.

6) Valetta Ruth Fingado is entitled to a $20,000 homestead exemption, except as to the creditor Loren Smith.

ORDER

This matter came before the Court on Valetta Ruth Fingado's motion to accept purchase offer and motion by joint tenant Ruth Fingado for payment from sale of Vermont Street house. For reasons expressed in the memorandum opinion in Adversary No. 89–0320 M filed this date, the motions are hereby denied.