**In re Donna J. TANZI, Debtor.**

**In re John D. Tanzi, Debtor.**

**Nos. 02–43072, 02–43115.**

United States Bankruptcy Court, W.D. Washington.

Dec. 19, 2002.

Jerome Shulkin, for debtors.

David Levant, for creditor.

## MEMORANDUM DECISION

PAUL B. SNYDER, Bankruptcy Judge.

This matter came before the Court on September 12, 2002, on the Objection to

Debtor's Claim of Florida Exemptions filed by Comerica Bank–California (Comerica). Resolution of Comerica's objection was continued to November 13, 2002, upon the Court's grant of John and Donna Tanzis' (Debtors) motion to convert from Chapter 7 to Chapter 11 of Title 11, and pending the filing of new schedules and attendance at the first meeting of creditors. Taking into consideration the evidence, pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows:

## FINDINGS OF FACT

The Debtors were the primary shareholders and officers in a business known as Transition Technology International (TTI). TTI had offices in California and a manufacturing facility in the State of Washington (Washington). The Debtors also had residences in both California and Washington. The Debtors guaranteed a loan of approximately $8,500,000 extended from Comerica to TTI. TTI defaulted on the loan and after the third forbearance agreement expired, demand for payment was made on the Debtors in March, 2002. Also in mid-March, 2002, the Debtors closed the sale of their California residence. Their Washington residence had also been listed for sale. On or about March 19, 2002, they moved from Washington to Florida, and on or about April 7, 2002, they purchased a residence in Naples, Florida, with the proceeds received from the sale of their California residence. Prior to the purchase of the Florida residence, an involuntary bankruptcy petition was filed against each of the Debtors by Comerica on March 27 and 28, 2002, in the Western District of Washington.

On summary judgment, this Court entered an Order for Relief Under Chapter 7 on June 14, 2002. On motion of the Debtors, which was opposed by Comerica, the case was converted to a proceeding under Chapter 11, Title 11, by order entered September 18, 2002. An order consolidating the cases for joint administration was entered on September 25, 2002.

In their bankruptcy schedules, the Debtors claim the entire value of their Florida residence as exempt ($985,000), alleging that they are entitled to use the more liberal Florida state exemptions. Comerica responds that the Debtors are required to use the Washington or Federal exemptions, as their domicile was Washington for purposes of 11 U.S.C. § 522(b)(2)(A). In an examination taken pursuant to Fed. R. Bankr.P.2004, Ms. Tanzi (Debtor) admitted that prior to March 19, 2002, their primary residence was in Washington. The Debtors both held Washington drivers licenses, were registered to vote in Washington, and admittedly resided in Washington for a longer portion of the 180 days immediately proceeding the filing of the involuntary petition than in either California or Florida.

The Debtors assert that the Court should look at the 180–day period commencing as of June 14, 2002, the date of the entry of the Order of Relief Under Chapter 7, for purposes of 11 U.S.C. § 522(b)(2)(A). During this period the Debtors allege that they were domiciled 88 days in Florida, 27 days in Washington and 66 days in California. Additionally, the Debtors argue that they planned on retiring in Florida since 1990–1991, and since relocating there in mid-March, 2002, have joined numerous organizations, both charitable and social.

## CONCLUSIONS OF LAW AND DISCUSSION

In accordance with 11 U.S.C. § 522(b)(2)(A), a debtor may exempt

any property that is exempt under Federal law ... or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding *the date of the filing of the petition,* or for a longer portion of such 180–day period than in any other place[.]

(Emphasis added.)

The first issue raised by the parties is whether the date for determining the 180–day period is the date of the filing of the petition or the date of the entry of the order for relief. Relying primarily on the plain language of the statute and the case of *In re Peacock,* 119 B.R. 605 (Bankr. N.D.Ill.1990), *aff'd,* 125 B.R. 526 (N.D.Ill. 1991), Comerica argues that the period for determining domicile under this section is fixed by the petition date. The Debtors, however, argue that the language of 11 U.S.C. § 303(f), *In re Wilson,* 62 B.R. 43 (E.D.Tenn.1985) and *In re Andreotti,* 16 B.R. 28 (Bankr.E.D.Cal.1981), support their position that the relevant period is fixed by the date of the entry of the order for relief.

The Court agrees with Comerica that the period for determining domicile for purposes of 11 U.S.C. § 522 is fixed by the petition date. The language of 11 U.S.C. § 522(b)(2)(A) is clear and specifically provides that a debtor may exempt property under state or local law at the place where domicile has been located for the "180 days immediately preceding the date of the filing of the petition." Where the plain meaning of a statute is clear and unambiguous, the sole function of the court is to enforce it according to its terms. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

Despite the plain language of 11 U.S.C. § 522(b)(2)(A), the Debtors argue that the Court should instead find that the "petition" date is the same as the "order for relief" date for purposes of 11 U.S.C. § 522(b)(2)(A) because this case was filed as an involuntary proceeding. There is no authority for reading such a distinction into the statute. In fact, the term "petition" is defined in 11 U.S.C. § 101(42) as a "petition filed under section 301, 302, 303, or 304 of this title." The term "order for relief," however, is a substitute term for "adjudication" as used in the 1898 Act. 2 L. King, *Collier on Bankruptcy,* ¶ 102.07, p. 102–10 (15th ed. rev.2000).

Courts have uniformly determined that a debtor's rights to exemptions are determined by the law in existence on the date that the bankruptcy petition, voluntary or involuntary, was filed. *See In re Fingado,* 113 B.R. 37, 43 (Bankr.D.N.M.1990), *aff'd,* 995 F.2d 175 (10th Cir.1993); *In re Peacock,* 119 B.R. at 609; *In re Butcher,* 75 B.R. 441, 442–43 (E.D.Tenn.1987), *aff'd,* 848 F.2d 189 (6th Cir.1988).

The Debtors reliance on *Wilson* and *Andreotti* in support of their argument is misplaced. The issue in these cases was whether property acquired after the filing of an involuntary petition could be exempted from the bankruptcy estate. Based on 11 U.S.C. § 303(f), which generally permits an involuntary debtor to continue to use, acquire and dispose of property until an order for relief is entered, these bankruptcy courts properly held that the date for determining which property a debtor could exempt in an involuntary case is the date of the order for relief. *In re Wilson,* 62 B.R. at 46; *In re Andreotti,* 16 B.R. at 31. Accordingly, at issue in *Andreotti* and *Wilson* was changes in property owned between the time the petition was filed and the order for relief, not changes in what state law governs the debtors' entitlement to exempt property. The *Wilson* court recognized this distinction in stating:

However, while Section 522(b)(2)(A) does provide that the debtor may exempt from property of the estate any property that is exempt under federal law or state law that is applicable on the date of the filing of the petition, this section can be read to fix the law controlling the exemptions not to fix the property subject to these exemptions at the time of the filing of the petition. *In re Wilson,* 62 B.R. at 45.

■ The holdings of *Wilson* and *Andreotti* are, in a different sense, applicable to this case. Similar to the debtors in *Wilson* and *Andreotti,* the Debtors in the instant case sold and purchased property subject to exemptions after the involuntary petitions were filed and prior to the order for relief being entered. Based on these decisions, the Debtors are therefore able to claim an exemption in their Florida residence, even though it was purchased after the petition date. Although the Debtors were able to alter the property subject to their exemptions, they are unable to alter what law controls the exemptions. The Debtors are therefore entitled to claim an exemption in the Florida residence, but only to the extent exempt under the law of the domiciliary state. *Wilson,* 62 B.R. at 46 (property exemption determined in regards to law of domiciliary state regardless of where property is situated).

The Court also notes that the U.S. District Court in *Wilson* was asked to review whether the bankruptcy court erred in determining that the debtor's domicile for the greater of the 180 day period was in the State of Tennessee or the State of Florida. In making its determination, the court looked at the "180–day period immediately preceding the filing of [the] petition." *In re Wilson,* 62 B.R. at 44. This dicta supports at least an inference that the petition date, rather than the date of

the order for relief controls. Accordingly, this Court concludes that the date of the filing of the bankruptcy petition, voluntary or involuntary, determines the applicable state exemption law.

The petitions were filed in this case on March 27 and 28, 2002. The Debtors admit that they did not relocate to Florida until March 19, 2002. It is therefore undisputed that the Debtors were not domiciled in Florida for a longer portion of the 180–day period preceding the filing of the petition than any other place. The objections to the Debtors' claim of Florida exemptions are sustained.

The Court notes that at the November 13, 2002 hearing, the Debtors indicated that it was their opinion that an evidentiary hearing would be necessary to resolve this issue. The Court agrees that if it had ruled that the date of the order for relief was determinative, such a hearing may have been necessary. However, because the Court concludes that the petition date controls, which was purely a legal issue, the intent of the Debtors to establish domicile in Florida was not at issue.

■ The Court also notes that it is not making a determination at this time as to whether the Debtors were domiciled for a longer portion of the 180–day period preceding the filing of the petition in California or Washington. When the objection to their claim of Florida exemptions was originally filed, the Debtors consistently maintained in their pleadings and declarations that in the 92 days prior to moving to Florida, they resided 62 days in Washington and 30 days in California. In these initial pleadings, the Debtors appeared to confuse the distinction between domicile and residence. A person can have only one domicile at a particular time even though he or she may have several residences. *In re Leffingwell,* 279 B.R. 328, 341 (Bankr.M.D.Fla.2002); *In re Saun-*

*ders,* 240 B.R. 636, 641 (S.D.Fla.1999); *In re Ring,* 144 B.R. 446, 449 (Bankr.E.D.Mo. 1992). Unlike residence, domicile is established by "physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989).

In their latest filed pleading, the Debtors now allege that they were only domiciled in Washington between February 20, 2002, and March 18, 2002. Prior to that period, they allege that their domicile remained in California. Assuming these allegations are true, the Debtors were domiciled for a longer portion of the 180–day period preceding the filing of the petition in California rather than Washington and their exemptions would therefore be governed by California law. Since the only issue presently before this Court was whether exemptions under Florida law were appropriate, the objecting parties have not had an opportunity to respond to this new allegation.

The Debtors are therefore required to file and serve an amended Schedule C— Property Claimed as Exempt by January 17, 2003. Any party in interest will have 30 days from the date the amendment is filed to file an objection to the Debtors' amended claim of exemptions.